1

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
2
*rclarkson@clarksonlawfirm.com*
Zachary T. Chrzan (SBN 329159)
3
*zchrzan@clarksonlawfirm.com*
22525 Pacific Coast Highway
4
Malibu, CA 90265
Tel: (213) 788-4050
5
Fax: (213) 788-4070

6
*Attorneys for Plaintiff*

7

8
**UNITED STATES DISTRICT COURT**

9
**NORTHERN DISTRICT OF CALIFORNIA**

10
PATRICK PETERSON, individually and on
behalf of all others similarly situated,                 Case No.
11
                                                         **CLASS ACTION COMPLAINT**
                        Plaintiff,
12
                                                         1.   VIOLATION OF CALIFORNIA
          vs.                                                 UNFAIR COMPETITION LAW,
13                                                            BUSINESS & PROFESSIONS CODE §
                                                              17200, *et seq.*
14
THE GLAD PRODUCTS COMPANY, a
Delaware corporation, and THE CLOROX                     2.   VIOLATION OF CALIFORNIA FALSE
15
COMPANY, a Delaware corporation,                              ADVERTISING LAW, BUSINESS &
                                                              PROFESSIONS CODE § 17500, *et seq.*
16
                        Defendants.
                                                         3.   VIOLATION OF CALIFORNIA
17                                                            CONSUMERS LEGAL REMEDIES
                                                              ACT, CIVIL CODE § 1750, *et seq.*
18

19                                                       4.   BREACH OF WARRANTY

20                                                       5.   FRAUDULENT INDUCEMENT —
                                                              INTENTIONAL
21                                                            MISREPRESENTATION

22                                                       6.   NEGLIGENT MISREPRESENTATION

23                                                       7.   UNJUST ENRICHMENT

24                                                       **JURY TRIAL DEMANDED**

25

26

27

28

CLASS ACTION COMPLAINT

1

**TABLE OF CONTENTS**

2

**Page No.**

3    COMPLAINT ............................................................................................................1

4    INTRODUCTION .....................................................................................................1

5    JURISDICTION .........................................................................................................6

6    VENUE ......................................................................................................................6

7    PARTIES ...................................................................................................................6

8         A.    Plaintiff ...............................................................................................6

9         B.    Defendants ...........................................................................................7

10   FACTUAL ALLEGATIONS .....................................................................................8

11        A.    Recycling and Sustainability Are Important to American Consumers ......................8

12        B.    Non-Biodegradable Materials are Harmful to the Environment ................................10

13        C.    Recycling Must Be Done Correctly ....................................................11

14        D.    The Problems with "Recycling" Trash Bags .......................................12

15        E.    Defendants' "Recycling" Bags Are Not Recyclable ...........................13

16        F.    All Trash Bags, Including the Products, Prevent Effective Recycling. ...............15

17        G.    The Deceptive Labeling and Advertising of the Products .....................................20

18        H.    Defendants Knowingly Misled, and Continue to Mislead, Plaintiff and Other

19              Reasonable Consumers Who Relied, and Continue to Rely on, the Material and

20              Deceptive Recyclability Claims to Their Detriment .................................32

21        I.    Defendants' False Advertising Unfairly Harms Competition ...................................36

22        J.    The Products Are Substantially Similar ...............................................38

23   NO ADEQUATE REMEDY AT LAW ....................................................................39

24   CLASS ACTION ALLEGATIONS .........................................................................42

25   COUNT ONE ...........................................................................................................46
         Violation of California Unfair Competition Law
26       (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

27

28        A.    "Unfair" Prong .................................................................................48

i

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

B.    "Fraudulent" Prong ............................................................................51

C.    "Unlawful" Prong ..............................................................................52

COUNT TWO .......................................................................................................53
Violation of California False Advertising Law
(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

COUNT THREE ....................................................................................................54
Violation of California Consumers Legal Remedies Act
(Cal. Civ. Code §§ 1750, *et seq.*)

COUNT FOUR ......................................................................................................57
Breach of Warranty

COUNT FIVE ........................................................................................................58
Fraudulent Inducement – Intentional Misrepresentation

COUNT SIX ..........................................................................................................60
Negligent Misrepresentation

COUNT SEVEN ....................................................................................................62
Unjust Enrichment/Restitution

PRAYER FOR RELIEF ........................................................................................63

DEMAND FOR JURY TRIAL .............................................................................64

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## COMPLAINT

1.     Plaintiff Patrick Peterson ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" or "**Class Members**") brings this class action complaint against Defendants The Glad Products Company ("**Glad**") and The Clorox Company ("**Clorox**") (collectively "**Defendants**"), and alleges the following based upon investigation, information, and belief, unless otherwise expressly stated as based on personal knowledge.

## INTRODUCTION

2.     **Synopsis.** This putative class action arises from Defendants' scheme to defraud environmentally conscious consumers by selling a line of Glad® trash bags named "RECYCLING" and labeling them, nationwide, as DESIGNED FOR MUNICIPAL USE even though virtually all municipalities *ban* the use of *any* trash bag for recycling, and the bags themselves are not recyclable *anywhere*. Worse, where the "Recycling" bags are incompatible with municipal recycling (which is virtually everywhere), all recyclable goods deposited in them are being diverted to landfills or incinerators. Consumers pay more for Defendants' "Recycling" bags (the "**Products**") to help the environment, but they receive a Product that is making things worse.

3.     Pollution is one of the most critical environmental issues today, contributing to a myriad of other environmental crises, including climate change and the global destruction of wildlife habitats. As production of non-biodegradable consumer goods, such as plastics, Styrofoam, and aluminum, has increased exponentially in recent years, the proliferation and severity of pollution has likewise increased.

4.     As a result, many Americans are more environmentally conscious than ever before and are dedicated to leading environmentally sustainable lifestyles. For most consumers, living a sustainable lifestyle means seeking out ways to lessen the negative impact of their consumption on the environment. To this end, a convenient yet meaningful act is being more thoughtful about the products they purchase.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

5.      Environmentally conscious consumers seek out "green" products that are marketed as eco-friendly, and products that are recyclable present an obvious choice. Consumers take comfort in knowing that the "green" products they purchase, when discarded, will be reclaimed and reused rather than deposited in a landfill where they will contribute to environmental degradation through soil, air, and water pollution.

6.      Consumers rely on the brands they trust to tell them *how* they can make more sustainable choices. Consumers who are looking to lessen their negative impact on the environment therefore seek products with eco-friendly and "green" label claims when making purchase decisions.

7.      Glad is an iconic brand and a company that has remained at the top of the waste bag market for years. As a result of its top market position, consumers associate Glad with quality and reliability—and consumers trust the claims they make on their product labels.

8.      As a result of Defendants' false labeling, consumers reasonably believe Glad's "Recycling" bags are recyclable and otherwise suitable for disposing of recyclables in their municipalities, at local recycling centers, or curbside pick-up.

9.      The truth, however, is the Products are made of Low-Density Polyethylene ("LDPE"), a material that is *not* recycled by material recovery facilities ("MRFs") in the United States.

10.      Moreover, virtually all municipalities in California, and the rest of the United States, prohibit the use of "Recycling" bags like the Products, as they are not recyclable and render anything inside them *non*-recyclable if used for municipal pick-up or drop-off. "Recycling" bags may be used *only* in municipalities that have specific "clear-bag" or "blue-bag" programs. Many states have *zero* such programs, and nationwide there are only a handful.

11.      Despite knowing that the Products are neither recyclable nor suitable for municipal use virtually anywhere in the United States, Defendants sell the Products nationwide without limitation.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

12.    Thus, Defendants take advantage of consumers seeking to make a positive difference with eco-friendly products and dupe them into making a *more* expensive, *less* sustainable choice.

13.    Defendants' fraud is featured prominently on the Product's front label: "Recycling" is stated in all capital letters, next to an image of a blue trash bag. Immediately below, in all caps, the label declares "Designed for Municipal Use" misleading consumers to reasonably, but incorrectly, believe the Products are recyclable and will be accepted by their municipal recycling programs. *See **Figure 1**,* Product Image.

 **Figure 1.**



14.    Encircling the product name "Recycling," and repeated elsewhere, the package features two blue arrows pointing in a circular motion, mimicking the "chasing arrows" symbol that is universally understood by consumers to indicate a product is recyclable.

15.    The label's note to "Please check your local facilities" is insufficient to dispel consumer deception. In fact, over twenty years ago, the FTC announced that "please check" language is invariably deceptive where a recyclability claim depends on a recycling program that is not widely available, as is the case here. Specifically, the FTC amended its Green Guides to advise that any qualifying "please check" language must also note *affirmatively* that a program is

"limited" or may *not* be available. No such language appears on the Products' label, the Products' website, or anywhere else.

16.     The label also fails to indicate the bags themselves are not recyclable, a disclaimer Glad's competitor, Hefty, added after it was sued by the Attorney General of the State of Connecticut for consumer fraud over its *same*-named "Recycling" bags that are made of the *same* *non*-recyclable plastic as Glad's "Recycling" bags.

17.     In an era where recycling has become a force for social change, consumers are trying to "do their part." Since ordinary consumers are not environmental experts, they trust the advertising of companies selling these products, and act according to what they are *told* is eco-friendly. Defendants take advantage of this desire to make a positive impact by deceptively selling expensive "Recycling" Products that harm the environment.

18.     Defendants' deceptive labeling and marketing of the Products violates California Civil Code Sections 1750, *et seq.* (the "**CLRA**"), particularly California Civil Code Sections 1770(a)(5), 1770(a)(7), and 1770(a)(9). As such, Defendants have committed per se violations of Business & Professions Code Section 17200, *et seq.* (the "**UCL**") and Business & Professions Code Section 17500, *et seq.* (the "**FAL**"). Defendants fraudulently induced Plaintiff and the Class to purchase the Products, breached express and implied warranties about the Products, and have been unjustly enriched as a result of their deceptive labeling scheme.

19.     Through their false and deceptive advertising, Defendants have misled Plaintiff and other reasonable consumers into buying the Products at stores across California and the United States based on materially false representations that the Products are suitable for recycling. Plaintiff and the Class suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek injunctive relief, including without limitation public injunctive relief, as well as, inter alia, compensatory damages, restitution, and attorneys' fees.

20.     **The Products.** The Products at issue are all varieties, colors, and sizes of Glad brand trash bags sold in the United States that are named "Recycling" and contain the false

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

recyclability claims on their labels and/or packaging as described in this Complaint. The Products include, but are not limited to, the following product lines.

     a.     Recycling Large Trash Drawstring Blue Bags

     b.     Recycling Large Trash Drawstring Clear Bags

     c.     Recycling Tall Kitchen Drawstring Blue Bags

     d.     Recycling Tall Kitchen Drawstring Bags (clear)

21.    **Primary Dual Objectives.** Plaintiff brings this action individually and on behalf of those similarly situated to represent a Nationwide Class and a California Subclass of consumers who purchased the Products. Plaintiff's primary objective is to secure injunctive relief requiring Defendants to change their unlawful advertising and labeling practices for the benefit of all consumers, including Plaintiff, the Class, and the general public. Plaintiff also seeks monetary recovery of the premium consumers paid for the Products due to the false and deceptive labeling, consistent with permissible law (including, for example, damages, restitution, and disgorgement).

22.    **Public Injunction.** Plaintiff seeks a permanent public injunction to prevent the future fraudulent labeling, advertising, and sale of "Recycling" bag products that are neither recyclable nor generally fit for municipal recycling. An order enjoining the use of deceptive recyclability claims in connection with the advertising and sale of the Products benefits the general public as a whole, as opposed to a particular class of persons, without consideration of the individual claims or legal rights of any non-party who would benefit from the relief sought. Defendants' fraudulent, deceptive, and unlawful conduct in labeling and advertising the Products poses an actual and imminent threat to the general public, including all consumers who are not members of the Class, as it risks economic injury due to false advertising. Further, the sale of the falsely labeled Products results in harm to the environment by inhibiting proper recycling processes, and therefore impairs the general public's compelling interest in promoting environmental wellbeing. Absent an order enjoining Defendants' unlawful conduct, consumers will continue to rely on Defendants' misrepresentations to their detriment, and the general public will be subjected to a persistent threat of future harm.

**JURISDICTION**

23.     This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332, because: (i) the Class consists of 100 or more members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest, and (iii) there is minimal diversity because at least one plaintiff and defendants are citizens of different states.

24.     This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367.

25.     Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California. Defendants are authorized to do and are doing business in California.

**VENUE**

26.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to Plaintiff's claims occurred in this District. Defendants made the challenged false representations in this District; and Plaintiff purchased the Product in this District. Defendants also receive substantial revenue from sales in this District, and Defendants made numerous misrepresentations on their labeling that had a substantial effect in this District, including but not limited to, labeling and packaging advertisements.

**PARTIES**

A.     **Plaintiff**

27.     **Plaintiff Patrick Peterson.** Plaintiff Patrick Peterson is, and at all times relevant hereto was, a citizen of California residing in the County of San Francisco. Plaintiff purchased a package of the Product, specifically Glad Recycling Tall Kitchen Drawstring Blue Bags (45-count), for approximately $15.00 at a retail store in San Francisco in 2022. In making his purchase, Plaintiff relied upon the "Recycling" representation on the Product's front label, as well as the two circling blue arrows, a universally recognized symbol used to identify recyclable goods. Plaintiff was misled by the name "Recycling" and other misrepresentations to reasonably believe that the Product is recyclable and fit for the purpose of disposing of recyclable waste. Plaintiff

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

relied on the statement "Designed for municipal use" and reasonably understood the statement to indicate that the Products are compatible with municipal recycling programs. In reality, the Products are not recyclable, not fit for the purpose of disposing of recyclable waste, and not accepted for use in recycling programs in virtually any municipality in California and the United States, including the municipality in which Plaintiff resides. The Products' labels were prepared and approved by Defendants and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products. At the time of purchase, Plaintiff did not know the Product was neither recyclable nor otherwise fit for municipal use. Had Plaintiff known the Product was not recyclable nor compatible with municipal recycling programs and instead contaminated otherwise recyclable goods, he would not have purchased the Product, or he would have paid significantly less for it. Plaintiff spent money to purchase the Product, which was different than that which he expected based on Defendants' misleading label, and Plaintiff did not receive the benefit of the bargain. Plaintiff recycles regularly, and he intends to purchase the Products again in the future if he could be sure that the Products are recyclable and suitable for municipal use. Plaintiff in the future will be unable to determine with confidence, based on the labeling and other marketing materials, and without specialized knowledge, whether the Products are truly recyclable or otherwise fit for municipal use. Plaintiff cannot now or in the future rely on representations on the Products' labels.

**B.**     **Defendants**

28.     **Defendant The Glad Products Company.** The Glad Products Company is a Delaware corporation headquartered in Oakland, California. Glad maintains its principal place of business at 1221 Broadway, Oakland, CA 94612. Glad was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, Glad has substantial contacts with and receives substantial benefits and income from and through the State of California. Glad and its agents manufactured, promoted, marketed, and sold the Products at stores and retailers throughout California and the United States, as well as on the internet. Glad and its agents prepared, authorized, ratified, and/or approved the false and deceptive labeling and

statements on the Products' packaging and disseminated them throughout California and the United States.

29.     **Defendant The Clorox Company.**  The Clorox Company is a Delaware corporation headquartered in Oakland, California and maintains its principal place of business at 1221 Broadway, Oakland, CA 94612. Clorox was doing business in the State of California at all relevant times, including the Class Period. Directly and through its agents, The Clorox Company has substantial contacts with and receives substantial benefits and income from and through the State of California. The Clorox Company and its agents manufactured, promoted, marketed, and sold the Products at stores and retailers throughout California and the United States, as well as on the internet. The Clorox Company and its agents prepared, authorized, ratified, and/or approved the false and deceptive labeling and statements on the Products' packaging and disseminated them throughout California and the United States.

30.     In committing the wrongful acts alleged herein, Defendants planned, participated in, and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendants participated in the making of such representations in that they did disseminate or cause to be disseminated said misrepresentations.

31.     Defendants, upon becoming involved with the manufacture, distribution, advertising, marketing, and sale of the Products, knew or should have known that the Products' recyclability claims are fraudulent. Defendants affirmatively misrepresent the nature and characteristics of the Products to convince the public to purchase and use the Products, resulting in significant profits to Defendants, all to the damage and detriment of the consuming public.

## **FACTUAL ALLEGATIONS**

### A.     **Recycling and Sustainability Are Important to American Consumers**

32.     As early as grade school, children are taught the importance of sustainability and consistently instructed to "reduce, reuse, recycle."[1] These habits are impressed upon the public

---

[1] Stephanie Osmanski, "Why is it Important to Recycle," GREENMATTERS (April 17, 2020) https://www.greenmatters.com/p/why-is-it-important-to-recycle.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

since childhood for good reason: they are critical in lessening the cumulative negative impact our use of consumer goods has on the environment.[2]

33.    Data shows that environmental awareness initiatives have effectively increased recycling rates. According to the EPA, the national recycling rate has increased from less than seven percent in 1960, to over 32 percent in 2018.[3]

34.    Over the last decade, environmental awareness has increased substantially.[4] Greater awareness has catalyzed a paradigm shift, causing Americans to focus more on their personal habits.[5] People are thinking about how long they run the faucet, the cleanliness of the air they breathe, and which bin they throw their trash into.[6]

35.    Americans are also more conscious than ever of their environmental impact as *consumers*.[7] Environmental product claims drive purchase decisions.[8] And most consumers are willing to pay a premium for sustainable products.[9] In PWC's 2019 Global Consumer Insights Survey, 37% of consumers stated that they specifically seek out products with "environmentally friendly packaging."[10]

36.    Survey data compiled by The Recycling Partnership and South West News Service indicates that consumers are willing to pay, on average, 26% more for sustainable

---

[2] *Id.*

[3] "National Overview: Facts and Figures on Materials, Wastes and Recycling," UNITED STATED ENVIRONMENTAL PROTECTION AGENCY (December 3, 2022), https://www.epa.gov/facts-and-figures-about-materials-waste-and-recycling/national-overview-facts-and-figures-materials.

[4] Stephen Cohen, "The Growing Level of Environmental Awareness," HUFFPOST (February 18, 2015), https://www.huffpost.com/entry/the-growing-level-of-envi_b_6390054.

[5] *Id.*

[6] *Id.*

[7] Greg Petro, "Consumers Demand Sustainable Products and Shopping Formats," FORBES (March 11, 2022), https://www.forbes.com/sites/gregpetro/2022/03/11/consumers-demand-sustainable-products-and-shopping-formats/?sh=54b3af626a06.

[8] Amy Emmert, "The Rise of the Eco-Friendly Consumer," STRATEGY+BUSINESS (July 8, 2021), https://www.strategy-business.com/article/The-rise-of-the-eco-friendly-consumer.

[9] "Majority of US Consumers Say They Will Pay More for Sustainable Products" SUSTAINABLE BRANDS (August 29, 2022), https://sustainablebrands.com/read/marketing-and-comms/majority-of-us-consumers-say-they-will-pay-more-for-sustainable-products.

[10] "It's Time for a Consumer-Centered Metric: Introducing 'Return on Experience," PWC (2019), https://www.pwc.com/cl/es/publicaciones/assets/2019/report.pdf.

9

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

products.[11] The same survey found that approximately 70% of respondents would go out of their way to support companies making strong efforts to be sustainable.[12]

37.    To capitalize on this trend in consumer choice, many companies now market and sell sustainable products—in other words, they are "going green."[13] In 2018, products that featured label claims related to recyclability and sustainability accounted for 16.6% of the consumer-packaged goods market and delivered nearly $114 billion in sales.[14]

### B.    Non-Biodegradable Materials are Harmful to the Environment

38.    "Biodegradable" materials are those that can be decomposed by nature, eventually becoming part of the land.[15] Conversely, "non-biodegradable" materials do not break down naturally and can last for millennia after being deposited in landfills and natural habitats.[16] The accumulation of non-biodegradable waste disrupts ecological balance by polluting ecosystems, harming wildlife, and contributing to several other environmental problems.[17]

39.    Plastic materials account for a large portion of non-biodegradable waste that negatively impacts the environment.[18] As of 2015, humans had manufactured around 8.3 billion tons of plastic, and around 60% of it is still in existence, deposited somewhere on the planet.[19] A large portion of these plastics come from single-use packaging—in 2015, 145 million metric tons of plastics went into producing packaging, and 141 million tons were discarded in the same year.[20]

---

[11] "Survey: Americans Prefer Sustainable Companies," THE RECYCLING PARTNERSHIP (May 28, 2020), https://recyclingpartnership.org/americas-prefer-sustainable-companies/.
[12] Id.
[13] "Why More and More Companies are Finally Going Green," RTS (February 21, 2022), https://www.rts.com/blog/why-more-and-more-companies-are-finally-going-green/.
[14] Tensie Whelan and Randi Kronthal-Sacco, "Research: Actually Consumers Do Buy Sustainable Products," HARVARD BUSINESS REVIEW (June 19, 2019), https://hbr.org/2019/06/research-actually-consumers-do-buy-sustainable-products.
[15] Kevin Lee, "What Are the Effects of Non-Biodegradable Waste?" SCIENCING (April 23, 2018), https://sciencing.com/styrofoam-biodegradable-22340.html.
[16] See id.
[17] See id.
[18] "What are the Harmful Effects of Non-Biodegradable Waste?" JUSTECO (June 4, 2021), https://justeco.in/harmful-effects-of-non-biodegradable-waste/.
[19] Roni Dengler, "Humans Have Made 8.3 Billion Tons of Plastic. Where does it all Go?" PBS (July 19, 2017), https://www.pbs.org/newshour/science/humans-made-8-3-billion-tons-plastic-go.
[20] Id.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Additionally, microplastics, small pieces of plastic coming from various sources, make their way into the ocean and pose risks to marine life.[21]

40.    Currently, plastic waste that is not recycled, and that does not end up deposited in landfills or littered, is incinerated. According to estimates, approximately 16% of U.S. plastic waste was incinerated in 2018.[22] Incineration of plastic waste releases substantial amounts of carbon dioxide into the atmosphere, contributing to climate change and a host of other environmental problems.[23] Additionally, burning plastic releases toxic gases, heavy metals, and carcinogenic particles into the air, destroying the air quality and health of local communities.[24]

**C.    Recycling Must Be Done Correctly**

41.    According to experts and climate activists, "recycling isn't working in the U.S."[25] One fundamental reason why is the contamination of recycling bins with non-recyclable items including "Recycling" bags like the Products—or any other non-recyclable item. Once contamination occurs, all the otherwise recyclable contents of those bins can no longer be recycled.[26] Contamination occurs when non-recyclable waste, including the Products, is placed into recycling bins, preventing the proper sorting of recyclable goods.[27] Recycling that is contaminated invariably ends up deposited in landfills, washed into the ocean, or polluting our atmosphere.[28] According to Recyclops, about 25% of all recycling is contaminated and thus is deposited in landfills with other non-recyclable waste.[29]

---

[21] "What are Microplastics," NATIONAL OCEAN SERVICE, https://oceanservice.noaa.gov/facts/microplastics.html (last visited January 13, 2023).
[22] Kevin Loria, "The Big Problem With Plastic" CONSUMER REPORTS (September 8, 2021), https://www.consumerreports.org/environment-sustainability/the-big-problem-with-plastic/ (last visited January 13, 2023).
[23] "Why burning plastic won't solve the plastic crisis" GREENPEACE (July 28, 2022), https://www.greenpeace.org.uk/news/incineration-burning-plastic-crisis/ (last visited January 13, 2023).
[24] Id.
[25] Renee Cho, "Recycling in the U.S. is Broken. How Do We Fix It?" COLUMBIA CLIMATE SCHOOL (March 13, 2020), https://news.climate.columbia.edu/2020/03/13/fix-recycling-america/.
[26] Id.
[27] Id.
[28] Id.
[29] "Understanding Recycling Contamination" RECYCLOPS, https://recyclops.com/understanding-recycling-contamination/ (last visited January 9, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

42.    While contamination can result from reckless recycling, not all contamination is purposeful. Unfortunately, consumers often attempt to recycle waste that they believe to be recyclable based on a products' false label claims.[30] To ensure proper recycling, it is therefore crucial that companies accurately represent the recyclable (or non-recyclable) nature of their products.

**D.    The Problems with "Recycling" Trash Bags**

43.    To leverage the known consumer demand for sustainable goods, and consumer's willingness to pay more for them, certain trash bag companies, including Defendants, began marketing trash bags claimed to be designed specifically for "Recycling." But the bags are made of the same non-recyclable plastic as "regular" trash bags.

44.    State consumer fraud authorities have started to take notice and are investigating claims of recyclability for plastic bags made out of LDPE, the material Defendants use for their "Recycling" bags. And recently, Hefty was sued by the State of Connecticut for consumer fraud, for naming and selling a line of "Recycling" trash bags—because consumers would reasonably, but incorrectly, believe the bags are both recyclable and suitable for municipal use. Defendants here are engaged in the same consumer fraud.

45.    It makes sense consumer fraud authorities are concerned about "Recycling" bags like Glad's. First, these "Recycling" bags are made with plastic materials that are not recyclable *anywhere* in the Nation. Second, municipalities will not even accept these bags for recycling *use* unless they have a "clear bag" or "blue bag" program. *And most do not.* Finally, the false Product name and label tricks consumers into believing they can bag recyclables outside of these limited programs; when that happens, the entire bag of recyclables is diverted to landfills or incinerators as regular trash. Consumers who care about the environment are unknowingly contributing to making pollution worse—and paying Glad a premium to do so.

---

[30] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

E.     **Defendants' "Recycling" Bags Are Not Recyclable**

46.     Defendants' "Recycling" bags are not made of recyclable plastics. Rather, the Products are made from LDPE plastics, which are not recycled by recycling facilities in the United States due to their low monetary value.[31]

47.     The United States used to sell its recyclable waste to China. But since China stopped purchasing the United States' recycling, there have been significant changes in plastic acceptance policies of U.S. MRFs due to declines in the demand for and value of collected plastic material.[32]

48.     This transition has led to realizations about the economics of recycling: notably, that LDPE plastics have a "negligible-to-negative value."[33] When MRFs lose money collecting this low-value plastic, they inevitably stop recycling it.[34] This means that, because they are made from low-value LDPE plastics, recycling bags like the Products are rejected by MRFs and are instead deposited in landfills or incinerated.

49.     A study conducted by Resource Recycling Systems surveyed California MRFs and found that only *one* facility formally accepts LDPE materials.[35] All of the MRFs surveyed received LDPE materials as part of their inbound stream, and all of them reported diverting those materials to *landfills*.[36] Specifically, the report states that "[t]he 15 MRFs (combined) capture approximately 35,000 tons (70MM lbs.) of PE film and bags and 100% of this is disposed" as trash, and *not* recycled.[37]

50.     Thus, even if "Recycling" bags might be recyclable in theory, the Product's labeling is still deceptive. According to the FTC, technical recyclability does not suffice for a recyclability

---

[31] John Hocevar, "Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastics Recyclability," GREEN PEACE (February 18, 2020), https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf.
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] "GREENBLUE / SPC CALIFORNIA REGIONAL FILM & BAG STUDY FINAL REPORT" RESOURCE RECYCLING SYSTEMS (November 15, 2022), https://sustainablepackaging.org/wp-content/uploads/2022/11/CA-Regional-LDPE-Study-Final-11.07.22-1.pdf.
[36] *Id.*
[37] *Id.*

13

claim if there is no established program available to recycle the product.[38] FTC regulations instruct that, even if a product is made from recyclable material, it should not be marketed as recyclable if "because of its shape, size, or some other attribute, [it] is not accepted in recycling programs."[39]

51.     A report published by Greenpeace in February 2020 cautioned companies against making recyclability claims in marketing materials or on products other than for PET #1 and HDPE #2 bottles and jugs.[40] The report warned that such representations "are not accurate in the U.S. and expose companies to legal, reputational and financial liability risks," and explained that companies continuing to make these claims "are liable for misrepresentation and need to ensure that the claims are accurate and not deceptive or misleading."[41]

52.     Defendants' largest competitor, Hefty, also uses LDPE plastics to manufacture its so-called "Recycling" bag products.

53.     On June 13, 2022, the Connecticut Attorney General brought a consumer fraud enforcement action against Reynolds Consumer Products, Inc., the owner/distributor of Hefty® brand Products, based on the labeling and marketing of its "Recycling" bags. The suit alleges that Hefty's bags, despite their name "Recycling," are not in fact recyclable and are otherwise incompatible with recycling facilities in Connecticut.[42]

54.     As the suit explains, Hefty's "Recycling" bags are not recyclable because they are made from low-value LDPE plastics, just like ordinary trash bags. Announcing the consumer fraud action, the AG's office remarked: "There are no municipal recycling programs anywhere in Connecticut that can accept and recycle these bags and the recyclables they contain. The Office of

---

[38] 16 C.F.R. § 260.12.
[39] *Id.*
[40] Hocevar, *supra* note 31.
[41] *Id.*
[42] "Attorney General Tong Sues Reynolds Over Non-Recyclable Hefty 'Recycling' Trash Bags" OFFICE OF THE ATTORNEY GENERAL CONNECTICUT (June 14, 2022), https://portal.ct.gov/AG/Press-Releases/2022-Press-Releases/AG-Tong-Sues-Reynolds-Over-Hefty-Recycling-Bags

14

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the Attorney General is unaware of *any* recycling facility *nationwide* that welcomes these bags."
(Emphasis added).[43]

55.    Defendants' *same*-named "Recycling" bags are made of the *same* non-recyclable
low-value LDPE plastics that are generally incompatible with municipal recycling nationwide.
Thus, what the Attorney General of Connecticut said in respect of Hefty applies with equal force
to Glad's "Recycling" bags: "These bags are fundamentally unsuitable for their advertised
purposes."[44]

56.    By selling the Products nationwide with the false name "Recycling," other
misrepresentations and accompanying deceptive imagery, Defendants mislead reasonable
consumers to believe that the Products are both recyclable and fit for municipal use throughout
California and the United States. As a result, consumers pay an unwarranted premium for the
Products based on their perceived recyclability, reasonably believing that they are making a
sustainable choice and a positive environmental impact.

57.    Reasonable consumers like Plaintiff are shocked to find out the Products are not
recyclable—anywhere—nor suitable for municipal use in the vast majority of municipalities
across the nation. Worse, consumers do not realize municipal use of "recycling" bags as
advertised can result in all the otherwise recyclable goods they place inside the bags being instead
diverted to landfills or incinerated. Consumers are paying a premium for a product they
reasonably believe will help the environment but in reality, has a net negative impact on recycling
nationwide.

F.    **All Trash Bags, Including the Products, Prevent Effective Recycling.**

58.    One of the most common reasons recyclables are considered contaminated and end
up in landfills because they are collected and deposited in plastic bags.[45] Because recyclables
must go through a sorting process at recycling plants, virtually all municipalities prohibit placing

---

[43] *Id.*
[44] *Id.*
[45] "Free Your Recyclables." WASTE MANAGEMENT – CORONA, CALIFORNIA,
https://www.coronaca.gov/home/showpublisheddocument/16576/636982811546270000 (last
visited January 9, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

recyclables in plastic bags of any kind.[46] Not only do the bags prevent the materials inside from being sorted, but they also endanger plant workers who must manually remove bags that get stuck in the sorting machines.[47] For these reasons, bagged recyclables are not actually recycled. Rather, they are rejected outright by MRFs and diverted to landfills or incinerators.

59.    Only places with a "clear bag" or "blue bag" program permit municipal use of "recycling" trash bags.

60.    "Clear bag" or "blue bag" programs are virtually nonexistent in California and throughout the United States.

61.    In fact, most communities around the Country prohibit municipal use of "Recycling" bags. For example, in San Francisco, recyclables "must be loose, free of a plastic bag liner" to be recycled.[48] Likewise, San Diego County's recycling guidelines specifically state "**DO NOT** bag your recyclables."[49]

62.    Due to the proliferation of falsely labeled "recycling" bags, like the Products, and the public's general misunderstanding across the nation that bagging recyclables is advisable, cities are spending tax-payer money to counter the false claims and misunderstandings, with "**Don't** bag your recyclable" ad campaigns. Defendants are contributing to and taking advantage of widespread misunderstanding by consumers that bagging recyclables is OK, even though most everywhere it is not.

63.    Consumers are confused and tricked by Glad's "Recycling Bags." A nationwide organization dedicated to recycling named "Recycle by City" warned publicly, using an image of Defendants' Products:

>    "Don't be fooled: If your city does not accept plastic bags for
>    recycling [as most don't], they won't accept these either. A plastic bag

---

[46] *Id.*
[47] *Id.*
[48] "What Goes Where?" Recology – San Francisco, https://www.recology.com/recology-san-francisco/what-goes-where/ (last visited January 9, 2023).
[49] "Recycling Do's and Don'ts" San Diego County Climate Action Plan, https://www.sandiegocounty.gov/content/sdc/sustainability/news/Recycling101.html#:~:text=Loose.,loose%20in%20the%20recycling%20bin (last visited January 9, 2023).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    is a plastic bag, **no matter what Glad Products calls it.**" (Emphasis

2    added). *See **Figure 2***, Recycle by City tweet.

3    ***Figure 2.***



14    64.    Using the same image of the Products and addressing the city of Chicago "Recycle

15    by City" asked, "Have you been fooled by these bags or the like?" And continues: "Don't be:

16    **Regardless of what the packaging may state**, no plastic bags of any kind are accepted in the

17    recycling program." (Emphasis added). *See **Figure 3***, Recycle by City, Chicago tweet.

18    ***Figure 3.***



CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

2       65.    The City of Buffalo has issued a similar warning over Defendant's Products through

3  the Mayor's "Buffalo Recycles" initiative:

4            "‼ Don't be fooled by marketing ‼

5            Hefty **and similar companies** are creating hefty issues for the

6            recycling industry when they market their plastic bags as 'Recycling.'"

7            (Emphasis added). *See **Figure 4**,* Buffalo Recycles tweet.

8  **_Figure 4._**



25       66.    Charlotte Dreizen, the Director of Sustainability and Environment at the leading

26  plastics trade group, Plastics Industry Association, highlighted the problem as well:

27            "Even though blue plastic bags are often marketed as being 'recycling

28            bags' they are **just as problematic** as any other plastic bag.

1   Recyclables *cannot* be recycled in plastic bags...” (emphasis added).

2   *See* ***Figure 5***, Dreizen tweet.

3   ***Figure 5.***



67.    Marketing trash bags designed for municipal “recycling” is thus inherently

misleading. Consumers who purchase “recycling” bags do so to positively impact the environment

by practicing sustainable habits, and they are unaware that municipal use of these bags, in fact,

harms the environment and is impeding sustainability goals nationwide.

68.    The harm caused by Defendants’ deception is multifaceted: it harms consumers by

causing them to pay an unwarranted premium for the Products based on deceptive recyclability

claims, endangers recycling plant workers who must manually remove the Products from jammed

machinery, and ultimately harms the environment by preventing the recycling of materials that

would be properly recyclable, if not for use of the Products. As the Attorney General of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Connecticut aptly put it: Any recyclable items inside "Recycling" bags end up "tossed on the trash heap."[50]

**G.    The Deceptive Labeling and Advertising of the Products**

69.    **The Products are Not Recyclable.** Defendants misleadingly name and otherwise label the Products "Recycling" bags and market them using imagery that reasonable consumers understand to indicate recyclability, even though the Products themselves are not recyclable anywhere in the Nation and in most places, municipal use of the Products contaminates otherwise recyclable waste.

70.    The FTC's "Green Guides" state that "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable," and that products should not be marketed as recyclable unless they can be "recovered from the waste stream through an established recycling program"[51] The FTC has also declared that where "*any* component significantly limits the ability to recycle the item, *any* recyclable claim would be deceptive."[52] (emphases added).

71.    The California legislature has adopted FTC regulations related to environmental marketing claims, declaring that it is "unlawful for a person to make an untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied."[53]

72.    The California Public Resources Code separately prohibits the offer, sale, and distribution of products or packaging "for which a deceptive or misleading claim about the recyclability of the product or packaging is made."[54]

73.    The "Recycling" representation, prominently displayed on the Products' label and reenforced by blue "chasing arrows," a symbol universally recognized to indicate recyclability, causes consumers to reasonably, but incorrectly believe that the Products are recyclable.

74.    In 2021, the California legislature passed SB 343, "The Truth in Labeling for Recyclable Materials" bill, which establishes strict criteria that a product must satisfy to be

---

[50] *See* Connecticut AG Tong Press Release, *supra* note 42.
[51] 16 C.F.R. § 260.12(a)
[52] 16 C.F.R. § 260.12(d)
[53] Cal. Bus. & Prof. Code § 17580.5(a)
[54] Cal. Pub. Res. Code § 42355.51(a)

CLASS ACTION COMPLAINT

considered "recyclable," and prohibits the use of the "chasing arrows" symbol, and any misleading variants, on non-recyclable goods.[55]

75.     SB 343 is codified in California Public Resources Code Section 42355.51. Under the statute, products must meet the following criteria to be considered "recyclable" in California: (1) the product or material is collected for recycling by programs "**that collectively encompass at least 60 percent of the population of the state**;" and (2) the product or material may be sorted into defined streams for recycling by processing facilities that "**collectively serve at least 60 percent of recycling programs statewide.**" (Emphases added).

76.     The Products do not meet either of these criteria because they are made from low-value LDPE plastics that are not recycled by MRFs in California or throughout the United States. Further, the Products are suitable for municipal recycling use in only a negligible number of California municipalities that maintain "blue bag" or "clear bag" recycling programs. Most municipalities have no such program.

77.     The statute further provides that, for nonrecyclable products, "packaging that displays a chasing arrows symbol . . . or any other symbol or statement indicating the product [] is recyclable, or otherwise directing the consumer to recycle the product [], is deemed to be a deceptive or misleading claim pursuant to this section and Section 17580.5 of the Business and Professions Code"[56]

78.     Notably, the "chasing arrows symbol" is defined to include "variants of that symbol that are likely to be interpreted by a consumer as an implication of recyclability, including, but not limited to, one or more arrows arranged in a circular pattern or around a globe."[57]

79.     The prominent "chasing arrows" symbol appearing on the Products' labeling fits within this definition. It is "one or more arrows" (two) "arranged in a circular pattern" around the Product name itself, "Recycling." These "chasing arrows" are likely to be understood by

---

[55] "SB 343: Is Recycling Liability on The Way?" THE NATIONAL LAW REVIEW (October 28, 2021), https://www.natlawreview.com/article/sb-343-recycling-liability-way (last visited January 25, 2023).
[56] Cal. Pub. Res. Code § 42355.51(b)(1).
[57] Cal. Bus. & Prof. Code § 17580(f)

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

reasonable consumers as advertising recyclability, especially given the Product name and other misleading representations identified herein.

80.    Because the Products are not recyclable, Defendants' use of the "Recycling" representation as well as the "chasing arrows" symbol on the Products' labels is unlawful, deceptive, and misleading, and violates California Public Resources Code Section 42355.51 as well as Section 17580.5 of the Business and Professions Code, as set forth above.

81.    Hidden on the FAQ page on Glad's website is the only implicit acknowledgment by Defendants that the Products are not in fact recyclable. Under the question "**Which Glad® products are recyclable?**" Defendants state that "GladWare containers, Glad Food Storage Bags and Glad Freezer Bags are recyclable." The Products, which are made from LDPE, are omitted from this list. *See __Figure 6__*, FAQs.

__*Figure 6.*__

## FAQs

**Why should I use Press'n Seal® instead of foil?**

**Which Glad® products are recyclable?**

GladWare containers, Glad Food Storage Bags and Glad Freezer Bags are recyclable. Since GladWare containers are #5 plastic, they can be recycled anywhere #5 plastic is accepted. Glad Food Storage and Freezer bags can be recycled anywhere that plastic bags are accepted. Please check www.plasticbagrecycling.org for a location in your area.

82.    At the point of purchase, however, and nowhere on the Products' label do Defendants acknowledge that their "Recycling" bags are not recyclable, despite their knowledge on this point.

83.    This stands in contrast to Glad's competitor, Hefty, who after being sued for consumer fraud by the state authorities in Connecticut for selling non-recyclable "Recycling" bags added this express disclaimer: "These bags are not recyclable." *See __Figure 7__*, Hefty Disclaimer.

1    *Figure 7.*



84.    Not only does Glad fail to make the same clear, it does the *opposite*: adding the "chasing arrows" to the product name "Recycling" to further the false notion that the Product is recyclable. In addition to deceiving consumers, this gives Glad an unfair competitive advantage in the market.

85.    **The Products are Not Fit for Municipal Recycling.** Moreover, the declaration appearing directly under the "Recycling" representation—"Designed for Municipal Use"—is deceptive because nearly all recycling programs in California and the United States *prohibit* municipal use of the Products and will reroute recyclables improperly placed in the Products to landfills or incinerators.

86.    As the FTC states: "An item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, should not be marketed as recyclable."[58]

87.    It is misleading for Defendants to market the Products as "Recycling" bags because municipal use of the Products as "designed" *impedes* recycling efforts in most jurisdictions across the United States. By using the Products as advertised, consumers are unknowingly sending non-recyclable waste (the Products) to MRFs and requiring workers to take extra (potentially dangerous) steps to separate the Products and their contents from other recyclable materials.

[58] *Id.*

23
CLASS ACTION COMPLAINT

Municipal use of the Products results in the contamination of other recyclables, prevents proper sorting, violates no-bagging policies, and prevents otherwise recyclable contents of the bags from being recycled at all.

88.    Consumers like Plaintiff reasonably infer that "Recycling" Products "Designed for Municipal Use," and on the shelves at their local stores, will be recycled and accepted for use by their recycling programs.

89.    In states like California where virtually all municipalities prohibit the bagging of recyclables, the mere act of selling the Products as "Recycling" bags "Designed for Municipal Use" is invariably deceptive. The same is true in all other states. There are only a handful of "blue bag" or "clear bag" programs nationwide, and in some states, zero.

90.    Without regard for this limited municipal use, Defendants knowingly distribute the Products nationwide as DESIGNED FOR MUNICIPAL USE including in communities where such use is prohibited – which is almost every community.

91.    **Defendants Fail to Sufficiently Qualify Recyclability Claims.** Under the Green Guides, unqualified recyclability claims are permitted only if they are true for a substantial majority of consumers or communities where the products are sold.[59] Because the "Recycling" bags are not recyclable anywhere, and most municipalities will not accept them for "use" either, Defendants must sufficiently qualify their recyclability claims. Defendants fail to do so.

92.    According to the Green Guides, a product may qualify recyclability claims by stating the percentage of consumers or communities to whom the claim will apply. Alternatively, the Guides recommend qualifications that vary in strength depending on how many communities or consumers to whom the claim applies. For example, if a claim applies to less than 60% of consumers where the product is sold, the Guides recommend a statement as follows: "This Product may **not** be recyclable in your area" or "Recycling facilities for this product may **not** exist in your area."[60] (emphasis added). Critically, where there are only a few communities that support recyclability claims, as is the case here, the Guides instruct a qualification explicitly state so:

[59] 16 C.F.R. § 260.12(b)(1).
[60] 16 C.F.R. § 260.12(b)(2).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

"This product is recyclable **only in a few communities** that have appropriate recycling facilities."[61] (emphasis added).

93.    Under this guidance, the Products' naked instruction to "Please Check Your Local Facilities" is insufficient to avoid consumer deception, as it fails to provide any indication that most facilities and programs will **not** support the recyclability claims and that in fact, only a **few** will accept them for use.

94.    Over twenty years ago, the FTC specifically called out "please check" language as invariably deceptive where a recyclability claim depends on a program that is not widely available. At that time, the FTC amended its Green Guides to advise that any qualifying "please check" language must also note *affirmatively* that a program is "limited" or may *not* be available, where that is the case, as it is here.[62] No such language appears on the Products' label, the Products' website, or anywhere else.

95.    Green Guide Example 4 is instructive. In that example, the naked qualification to "Check to see if recycling facilities exist in your area" is deemed deceptive because it does not adequately disclose the "limited availability" of programs to support the recyclability claim.[63] This is nearly identical to the language on the Products, which is deceptive for the same reason: it advises consumers simply to "check" rather than informing them of the very limited chance the Products are suitable for municipal use where they live.

96.    Without any indication as to *why* they needed to "check" with their "local facilities" (or even to which "facilities" Defendants refer) Plaintiff did not, and reasonable consumers do not, understand this language to mean they may *not* use the Products in *most* municipalities and thus odds are, they cannot use them in their municipality. A more reasonable interpretation is a consumer need only check locally to find out *how to use* the bags — not to find out they cannot use them at all —especially given the more prominent statement: "Designed for Municipal Use."

---

[61] *Id.*

[62] "FTC Expands Definition of 'Recyclable' and 'Recycled' Claims Agency Updating Its 'Green Guides,'" FEDERAL TRADE COMMISSION (April 22, 1998), https://www.ftc.gov/news-events/news/press-releases/1998/04/ftc-expands-definition-recyclable-recycled-claims-agency-updating-its-green-guides.

[63] 16 C.F.R. § 260.12.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

This likelihood of consumer confusion is a perfect example of why the FTC declared "Please Check" disclaimers ineffective over twenty years ago. *See* **<u>*Figure 8*</u>**, Defendants' Labeling.

**<u>*Figure 8.*</u>**



97.    **Defendants' Website.** Glad's website promotes an overall eco-friendly brand image and is riddled with claims that tout the sustainability of its Products in general. On its home page, Defendants immediately direct consumers to learn about Glad's "sustainability journey." *See* **<u>*Figure 9*</u>**, Home Page.

**<u>*Figure 9.*</u>**



98.    Defendants hold themself out on the Glad website and elsewhere as a source of expert information on recycling. Still, among all their "Recycling" tips, nowhere do they advise

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  what recycling experts and most municipalities have been trying to get across to consumers: that

2  they should *not* be bagging recyclables. This is a deliberate choice to put profits over the

3  environment and consumers who care about the environment, as it would reveal why consumers

4  do not need and in fact, should *not* buy "Recycling" bags for municipal use.

5  99.    Instead, Glad has chosen to take advantage of the widespread but incorrect belief

6  that bagged recyclables are OK by inventing a line of Products that adds to the confusion and

7  furthers the very behavior municipalities across the Nation are trying to stop because it is

8  *antithetical* to recycling.

9  100.    One Member of the Board of Directors of the National Recycling Coalition cited

10  Glad "Recycling" bags, in particular, as a reason why the public may be continuing to put

11  recycling in plastic bags, despite requests by recycling collectors not to, herself pleading with

12  Defendants: "@GladProducts please stop confusing consumers!" *See **Figure 10**,* National

13  Recycling Coalition tweet.

14  ***Figure 10.***



CLASS ACTION COMPLAINT

101.   The brand's focus on eco-consumerism and its purported commitment to sustainability further supports the reasonableness of consumers' belief that the Products' recyclability claims are truthful. *See **Figure 11***, Sustainability Mission.

***Figure 11.***



102.   Below its "Doing more to waste less" mission, Glad details its "Four Pillars of Sustainability," features articles written by its sustainability "Experts," and gives consumers the opportunity to "listen and learn" with links to podcasts. This wealth of information on sustainability gives consumers the impression that Glad is educated on and committed to sustainability, and thus lends credence to its sustainability-driven label claims. *See **Figures 12-15***, Sustainability Claims.

***Figure 12.***



1

*Figure 13.*

2

3



4

5

6

7

8

9

10

11

12

13

14

*Figure 14.*

15



16

17

18

19

20

21

22

23

24

25     ///

26     ///

27     ///

28     ///

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

*Figure 15.*



103.   Additionally, the Products are available for purchase under the website's "Sustainable Solutions" tab. *See **Figure 16**,* Sustainable Solutions. A "Recycling" bag that is not recyclable anywhere, and that affirmatively impedes recycling in most places, is hardly a "sustainable solution." It is part of the problem. As the Attorney General of Connecticut put it: "Placing recyclables in plastic bags results in those items being thrown away, which is completely counter to what we need to be doing."[64]

*Figure 16.*



---

[64] *See* Connecticut AG Tong Press Release, *supra* note 42.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

104.    Nowhere on Glad's website do Defendants discuss the number of municipalities that accept, or do not accept, these bags. Defendants do not provide any resource, much less a simple, user-friendly resource—such as a location-based list—that informs consumers where the bags can and cannot be used. And while the website references "applicable municipal programs," nowhere is there a statement indicating such programs are few, limited, or otherwise unlikely to exist for most consumers. As such, the website language is also deceptive under FTC Green Guides and otherwise insufficient to dispel deception (even beyond the fact that the "applicable municipal program" language does not even appear on the Product label or otherwise at the point of purchase.) *See __Figure 17__*, Municipal Programs.

*__Figure 17.__*



105.    **Reliance.** During the course of its false, misleading, and deceptive advertising campaign, Defendants have sold millions of the Products based upon their false label and misrepresentations. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations.

106.    Because of the social pressure to recycle and be "sustainable," consumers are motivated to purchase products like Defendants', and rely on the label claims of these products when doing so. When purchasing the Products, Plaintiff and the Class relied on Defendants' false

1    and misleading label claims, causing them to believe that the Products are recyclable and

2    otherwise fit for municipal recycling use.

3        107.  **No Legitimate Business Reason.** There is no practical reason for the false or

4    misleading labeling and advertising of the Products, other than to mislead consumers as to the

5    nature of the Products. Through such false and misleading advertising, consumers purchase the

6    Products incorrectly thinking they are recyclable or otherwise fit for municipal recycling use, thus

7    providing Defendants with a financial windfall.

8        108.  At all relevant times, Defendants have packaged, advertised, marketed, distributed,

9    and sold the Products to consumers throughout California and the nation misleading consumers

10   into believing the Products are recyclable and otherwise fit for municipal recycling use when they

11   are not.

12   **H.    Defendants Knowingly Misled, and Continue to Mislead, Plaintiff and Other**

13   **Reasonable Consumers Who Relied, and Continue to Rely on, the Material and**

14   **Deceptive Recyclability Claims to Their Detriment**

15       109.  **Reputability.** Defendant Glad is an iconic and trusted brand that has been in

16   business since the 1960's. With such an established history, consumers reasonably expect all

17   representations on the Products' labels to be truthful and reliable. Defendants use the goodwill

18   associated with the Glad® brand name to mislead consumers in California and nationwide to

19   believe that the Products are fit for "Recycling." Glad already enjoys a massive market share in

20   the trash bag industry, and by deceptively labeling the Products as "Recycling" bags, Glad attracts

21   environmentally conscious consumers, increases sales, and profits substantially from the

22   fraudulent labeling.

23       110.  **Reasonable Consumer's Perception.** Defendants' labeling, coupled with their

24   pervasive sustainability-focused advertising campaign and brand strategy, misleads reasonable

25   consumers, including Plaintiff and the Class, into believing that the Products are recyclable and fit

26   for municipal use.

27       111.  The average consumer lacks any specialized knowledge related to the processes

28   involved in recycling, or the recyclability of particular waste materials. Even if consumers did

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  possess this specialized knowledge, there is no way for them to identify the materials used to

2  manufacture the Products and determine whether the Products are, in fact, recyclable as

3  Defendants represent. Moreover, the typical consumer is not familiar with the specific recycling

4  policies of the municipality in which they live, and this information is not easily accessible to

5  consumers, particularly at the point of sale. Defendants' qualifier also fails to clearly communicate

6  to consumers *why* they may need to familiarize themselves with their local municipality policies,

7  nor does it explain why the bags, which are "Designed for Municipal Use," are not made for *their*

8  municipality – or most any in the nation.

9       112.  By deceptively labeling the Products, Defendants capitalize on consumers'

10  preference for sustainable Products, and reasonable consumers, including Plaintiff, perceived the

11  Products as recyclable and fit for the purpose of municipal recycling as Defendants represent. This

12  deceptive labeling scheme gives Defendants an unfair competitive advantage in the market,

13  negatively affects the environment, and causes consumers to pay an unwarranted premium for the

14  Products.

15       113.  **Deception.** The misrepresentations regarding the recyclability of the Products are

16  misleading and deceptive because the Products are neither recyclable nor generally fit for

17  municipal disposal of recyclable waste. Even if the LDPE plastics that the Products are

18  manufactured from are *technically* recyclable, in reality, their economic value prevents them from

19  ever being recycled in the United States. Per the FTC and California advertising law, technical

20  recyclability, where there is no program in place to recycle the material, is not a legitimate basis

21  for a recyclability claim.[65] Thus, the labeling and marketing of the Products as recyclable is

22  misleading and deceptive.

23       114.  Additionally, the Products do not facilitate effective municipal recycling as

24  advertised. In fact, the opposite is true—municipal use of the Products generally inhibits

25  recycling, as otherwise recyclable goods placed inside them are being sent to landfills, or

26  incinerators, as regular trash. And although municipal use of the "Recycling" bags is prohibited in

27  most places, the Products are labeled "Designed for Municipal Use" and fail sufficiently to qualify

28  ___
[65] 16 C.F.R. § 260.12.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

that statement to avoid consumer deception, as required by the Green Guides and otherwise. Thus, labeling and marketing the Products as fit for municipal recycling use are misleading and deceptive.

115.   **Materiality and Reliance.** The "Recycling" misrepresentation is material because environmentally conscious consumers prefer eco-friendly products that can help them reduce their negative impact on the environment and achieve personal sustainability goals. In all cases, consumer and marketing research is clear: consumers care about their environmental impact. These consumers seek out, and are willing to pay more for, products advertised as sustainable and eco-friendly like the Products. Consequently, Defendants have sold millions of the Products based on their misleading recyclability claims. Plaintiff and the Class reasonably relied on Defendants' misrepresentations as to the recyclability and municipal use of the Products in deciding to purchase the Products and, as a result, have lost money and suffered injury in fact.

116.   **Defendants' Knowledge.** Glad employs teams of environmental scientists, so Defendants knew, or should have known, that its recyclability claims were misleading, deceptive, and unlawful, at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products to Plaintiff and the Class. Defendants' inclusion of ineffective qualifying language itself demonstrates they were aware of municipalities' limited acceptance of the Products for recycling purposes. Defendants intentionally and deliberately marketed "Recycling" bags, even though the Products are not recyclable nor generally fit for municipal recycling use, to induce Plaintiff and the Class to buy the Products.

a.   **Knowledge of Reasonable Consumers' Perception.** Defendants knew or should have known that the Products' labeling would lead reasonable consumers to believe that the Products are recyclable and fit for the purpose of municipal disposal of recyclable waste—because they named the bags "Recycling," included a misleading variant of the universal symbol of recyclability, and labeled the Products "Designed for Municipal Use," without qualifying language indicating that was true in only very limited places, as urged by the Green Guides.

CLASS ACTION COMPLAINT

b.    **Knowledge of Materiality.** Defendants knew or should have known that their recyclability claims were material to consumers. First, manufacturers and marketers, like Defendants, generally reserve the front display panel of labels or packaging on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Defendants *named* the Products "Recycling" bags, and placed RECYCLING in all caps on the front of the Product label, and this conspicuousness alone demonstrates Defendants' awareness of its importance to consumers and Defendants' understanding that consumers prefer and are motivated to buy products that are perceived as recyclable and suitable for municipal recycling use. Second, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping consumers' expectations, because they believe those repeated messages will drive consumers to buy the product. Here, the constant, unwavering use of eco-friendly slogans and imagery on countless Products, advertisements, and throughout Defendants' marketing campaign, evinces Defendants' awareness that recyclability claims are important to consumers. Third, the Products' value is tied to their supposedly recyclable nature and acceptance for use in municipal recycling programs. Otherwise, consumers could just buy ordinary trash bags. The recyclability claims differentiate the Products not only from ordinary trash bags but even other sustainably-made trash bags. The fact that Defendants developed the Products and brought them to market demonstrates Defendants' knowledge that recyclability claims are important to consumers.

c.    **Defendants' Continued Deception, Despite Their Knowledge.** Defendants had exclusive control over the labeling and marketing of the Products—i.e., Defendants could have stopped using the deceptive representation to sell the Products. However, despite Defendants' knowledge of the Products'

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

deceptiveness, and Defendants' knowledge that consumers reasonably rely on the "Recycling" name and other recyclability claims in deciding to buy the Products, Defendants deliberately chose to continue marketing the Products as "Recycling" bags, "Designed for Municipal Use," thereby misleading consumers into buying or overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that the Products' label misleads reasonable consumers, such as Plaintiff, into buying the Products based on the Products' purported recyclability and fitness for municipal recycling, which Defendants deceptively advertised and warranted.

117.   **Injury in Fact.** Plaintiff and reasonable consumers would not have purchased the Products at all or would have paid significantly less if they had known the truth — that the Products are not recyclable nor fit for municipal recycling use. Defendants' misleading and deceptive practices therefore proximately caused harm to Plaintiff and the Class. Consumers, including Plaintiff, purchased the Products to their detriment and did not receive the product they reasonably expected.

118.   **No Legitimate Business Reason.** There is no legitimate reason for the false and misleading labeling and advertising of the Products, other than to mislead consumers with regard to the false recyclability claims, and thereby increase sales and provide Defendants with a financial windfall.

I.     **Defendants' False Advertising Unfairly Harms Competition**

119.   With eco-consumerism on the rise, there is a heightened demand for products that can help individuals meet their sustainability goals. Inevitably, competitor companies will attempt to enter the market for sustainable waste disposal products to meet growing consumer demand. Ultimately, this is good for consumers: it provides them with greater choice in the marketplace.

120.   There are a number of legitimate sustainable waste disposal products on the market, such as biodegradable and compostable waste bags, or bags made out of reclaimed materials. However, in selling their "Recycling" bags, Defendants attempt to invent a new line of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

"sustainable" waste disposal products that, by its very nature, misleads consumers as to the Products' functionality and usefulness. Since the bagging of recyclables is not only unnecessary, but also counterproductive, and in most places prohibited, competitors that are truly committed to sustainability do not sell a comparator "Recycling" bag product. Thus, consumer choice for "Recycling" bags is narrowed to a few, inherently deceptive products on the market—one of which is Defendants'.

121.   Defendants' conduct stifles competition by creating an ineffective, environmentally harmful product line that increases the visibility of its already ubiquitous brand and strengthens its position in the market relative to its competitors. Defendants' hope is that consumers who are seeking sustainable waste solutions will opt for *all* available sustainable solutions—and choose one brand, across the board, that has the most "sustainable" products to offer. Glad benefits from its false product line by occupying more shelf space and directing attention away from honest competitors that are focused on truth, quality, and positive impact.

122.   Glad already enjoys a dominant position in the trash bag and waste disposal market, and the introduction of the inherently deceptive "Recycling" product line threatens competition by increasing sales and extracting a price premium from consumers without delivering the advertised benefits. By expanding its already overwhelming market share, Glad may dissuade others from developing and bringing to market a product that is truly recyclable and suitable for municipal use. Thus, Defendants' fraudulent and deceptive marketing of "Recycling" Products serves as a major barrier to entry for lawfully acting competitors attempting to break into the market with a truly eco-friendly recycling bag product.

123.   This stifling impact on competition harms consumers and law-abiding companies and threatens market growth. Ultimately it reduces consumer choice, making it more likely that consumers will be deceived into buying Defendants' Products, reasonably, but incorrectly, thinking that the Products are recyclable and otherwise fit for municipal recycling. Less choice also means consumers pay higher prices at the cash register.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**J.      The Products Are Substantially Similar**

124.    At all relevant times, Defendants have packaged, advertised, marketed, distributed, and sold the Products to consumers throughout California and the nation based on claims that the Products are recyclable and suitable for municipal use, when they are not.

125.    As described herein, Plaintiff purchased the Glad Recycling Tall Kitchen Drawstring Blue Bags (the "**Purchased Product**"). The additional Products (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Product.

a.     **Defendants.** All Products are owned, manufactured, sold, marketed, advertised, labeled, and packaged by Defendants.

b.     **Brand.**  All Products are sold under the same brand name: Glad®.

c.     **Purpose.** All Products are plastic trash bags used to contain and dispose of recyclable waste.

d.     **Marketing Demographics.** All Products are marketed directly to consumers for personal use, and to environmentally conscious consumers in particular.

e.     **Marketing Mission.** All Products are marketed as "Sustainable Solutions" per Glad's website and contribute to Glad's overall mission to design and manufacture eco-conscious products.

f.     **Plastic Makeup.** All Products are made from LDPE plastics, which is not recycled in practice.

g.     **Deceptive Labeling.** All Products implement the same deceptive labeling: they are named "Recycling." They also feature the same deceptive imagery reinforcing the deception: chasing arrows that consumers reasonably understand to mean the Products are recyclable. Additionally, the Products all misrepresent they are "Designed for Municipal Use" even though in most places they are not. Finally, all products include an ineffective "Please Check Your Local Facilities" qualifier, which under the FTC's Green Guides, and otherwise, fail to dispel the deceptive recyclability claims. None of the Products provide any other language that would indicate the truth: that the

38

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  Products are not recyclable anywhere, and that in very few communities are

2  they even acceptable for municipal use.

3      h.   **Misleading Effect**.  The misleading effect of the labeling and marketing on

4  consumers is the same for all Products—consumers over-pay expecting a

5  product specifically fit for "Recycling," but instead receive Products that are

6  neither recyclable nor generally fit for municipal recycling, in violation of

7  California and federal consumer protection and advertising laws. They are

8  denied the benefit of their bargain.

9  **NO ADEQUATE REMEDY AT LAW**

10     126.   Plaintiff and members of the Class are entitled to equitable relief as no adequate

11  remedy at law exists.

12      a.   **Broader Statutes of Limitations.** The statutes of limitations for the causes

13  of action pled herein vary. The limitations period is four years for claims

14  brought under the UCL, which is one year longer than the statutes of

15  limitations under the FAL and CLRA. In addition, the statutes of limitations

16  vary for certain states' laws for breach of warranty and unjust

17  enrichment/restitution, between approximately two and six years. Thus,

18  California Subclass members who purchased the Products more than three

19  years prior to the filing of the complaint will be barred from recovery if

20  equitable relief were not permitted under the UCL. Similarly, Nationwide

21  Class members who purchased the Products prior to the furthest reach-back

22  under the statute of limitations for breach of warranty, will be barred from

23  recovery if equitable relief were not permitted for restitution/unjust

24  enrichment.

25      b.   **Broader Scope of Conduct.** In addition, the scope of actionable misconduct

26  under the unfair prong of the UCL is broader than the other causes of action

27  asserted herein.  It includes, for example, Defendants' overall unfair

28  marketing scheme to promote and brand the Products as "Recycling" trash

39
CLASS ACTION COMPLAINT

1    bags, across a multitude of media platforms, including the Products' labels

2    and packaging, over a long period of time, in order to gain an unfair

3    advantage over competitor products and to take advantage of consumers'

4    desire for products that comport with the labeling and advertising. The UCL

5    also creates a cause of action for violations of law (such as statutory or

6    regulatory requirements and court orders related to similar representations

7    and omissions made on the type of products at issue).  Thus, Plaintiff and

8    Class members may be entitled to restitution under the UCL, while not

9    entitled to damages under other causes of action asserted herein (e.g., the

10   FAL requires actual or constructive knowledge of the falsity; the CLRA is

11   limited to certain types of plaintiffs (an individual who seeks or acquires, by

12   purchase or lease, any goods or services for personal, family, or household

13   purposes) and other statutorily enumerated conduct). Similarly, unjust

14   enrichment/restitution is broader than breach of warranty.  For example, in

15   some states, breach of warranty may require privity of contract or pre-lawsuit

16   notice, which are not typically required to establish unjust

17   enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to

18   recover under unjust enrichment/restitution, while not entitled to damages

19   under breach of warranty, because they purchased the products from third-

20   party retailers or did not provide adequate notice of a breach prior to the

21   commencement of this action.

22   c.    **Injunctive Relief to Cease Misconduct and Dispel Misperception.**

23   Injunctive relief is appropriate on behalf of Plaintiff and members of the

24   Class because Defendants continue to fraudulently misrepresent the Products

25   as alleged herein. Injunctive relief is necessary to prevent Defendants from

26   continuing to engage in the unfair, fraudulent, and/or unlawful conduct

27   described herein and to prevent future harm—none of which can be achieved

28   through available legal remedies (such as monetary damages to compensate

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products labeling and advertising is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendants' future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d.     **Public Injunction.** Further, because a "public injunction" is available under the UCL and sought in this case, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e.     **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendants, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1   (such as the UCL, FAL, and CLRA) have no impact on this Court's

2   jurisdiction to award equitable relief under the remaining causes of action

3   asserted on behalf of non-California putative class members.

4         f.      **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly,

5   this is an initial pleading in this action and discovery has not yet commenced

6   and/or is at its initial stages. No class has been certified yet. No expert

7   discovery has commenced and/or completed. The completion of fact/non-

8   expert and expert discovery, as well as the certification of this case as a class

9   action, are necessary to finalize and determine the adequacy and availability

10  of all remedies, including legal and equitable, for Plaintiff's individual

11  claims and any certified class. Plaintiff therefore reserves his right to amend

12  this complaint and/or assert additional facts that demonstrate this Court's

13  jurisdiction to order equitable remedies where no adequate legal remedies are

14  available for either Plaintiff and/or any certified class. Such proof, to the

15  extent necessary, will be presented prior to the trial of any equitable claims

16  for relief and/or the entry of an order granting equitable relief.

17                                    **CLASS ACTION ALLEGATIONS**

18      127.   **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal

19  Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly

20  situated, and as members of the Classes defined as follows:

21        All residents of the United States who, within the applicable statute of limitations periods,
22        purchased the Products for purposes other than resale ("**Nationwide Class**"); and

23        All residents of California who, within four years prior to the filing of this Complaint,
      purchased the Products for purposes other than resale ("**California Subclass**").
24

25  ("Nationwide Class" and "California Subclass," collectively, "**Class**").

26      128.   **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their

27  assigns, successors, and legal representatives; (ii) any entities in which Defendants have

28  controlling interests; (iii) federal, state, and/or local governments, including, but not limited to,

their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

129.    **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

130.    **Numerosity.** Upon information and belief, the Nationwide Class consists of hundreds of thousands of purchasers (if not more) dispersed throughout the United States, and the Class likewise consists of tens of thousands of purchasers (if not more) dispersed throughout the State of California. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

131.    **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendants engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products as alleged herein;

b.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

c.    Whether Defendants' conduct of advertising and selling the Products as "Recycling" when they are not suitable for recycling constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*;

d.    Whether Defendants used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

e.    Whether Defendants represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

f.    Whether Defendants advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

g.      Whether Defendants' labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

h.      Whether Defendants knew or by the exercise of reasonable care should have known their labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

i.      Whether Defendants' conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j.      Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k.      Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

l.      Whether Plaintiff and the Class paid more money for the Products than they actually received;

m.      How much more money Plaintiff and the Class paid for the Products than they actually received;

n.      Whether Defendants' conduct constitutes fraudulent inducement by intentional misrepresentation;

o.      Whether Defendants' conduct constitutes negligent misrepresentation;

p.      Whether Defendants' conduct constitutes breach of warranty;

q.      Whether Plaintiff, the Class, and the public at large are entitled to injunctive relief; and

r.      Whether Defendants were unjustly enriched by their unlawful conduct at the expense of Plaintiff and the Class.

132. **Typicality.** Plaintiff's claims are typical of the claims of the Class Members they seek to represent because Plaintiff, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

133.   **Adequacy.** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

134.   **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

    b.    Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

    c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d.    When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendants.

135.   **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

136.   **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met, as Defendants have

1    acted or refused to act on grounds generally applicable to the Class, thereby making appropriate

2    final injunctive or equitable relief with respect to the Class as a whole.

3        137.   **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that

4    are likely to be encountered in the management of this action that would preclude its maintenance

5    as a class action.

6                        **COUNT ONE**

7            **Violation of California Unfair Competition Law**

8            **(Cal. Bus. & Prof. Code §§ 17200, et seq.)**

9                **(*On Behalf of the California Subclass*)**

10       138.   **Incorporation by Reference.** Plaintiff repeats and realleges the allegations set forth

11   in the preceding paragraphs and incorporates the same as if set forth herein at length.

12       139.   **California Subclass.** Plaintiff brings his claims individually and on behalf of the

13   California Subclass.

14       140.   **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the

15   **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall

16   mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or

17   misleading advertising."

18       141.   **False Advertising Claims.** Defendants, in their advertising and packaging of the

19   Products, made false and misleading statements and fraudulent omissions regarding the quality

20   and characteristics of the Products. Specifically, Defendants market and represent the Products as

21   recyclable and fit for "Recycling" even though the Products inhibit recycling and are themselves

22   not properly considered recyclable. Such claims appear on the label and packaging of the

23   Products, which are sold at retail stores throughout California and the United States, and over the

24   internet.

25       142.   **Deliberately False and Misleading.** Defendants do not have any reasonable basis

26   for the claims about the Products made in Defendants' advertising and on Defendants' packaging

27   or labeling because the Products are not recyclable or fit for recycling, and they often inhibit

28   proper recycling. Defendants know and at all relevant times knew that the Products are not

46

recyclable or truly fit for recycling, yet Defendants intentionally advertise and market the Products to deceive reasonable consumers into believing that the Products are fit for recycling.

143. **False Advertising Claims Cause Purchase of Products.** Defendants' labeling and advertising of the Products caused, and continues to cause, reasonable consumers, including Plaintiff, to believe that the Products are recyclable and fit for recycling.

144. **Injury in Fact.** Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct—namely Plaintiff and the Class lost the purchase price for the Products they bought from the Defendants.

145. **Conduct Violates the UCL.** Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

146. **Reasonably Available Alternatives/Legitimate Business Interests.** Defendants failed to avail themselves of reasonably available, lawful alternatives to further their legitimate business interests.

147. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter their conduct or Defendants are otherwise ordered to do so.

148. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of

47

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the Products as alleged herein. Likewise, Plaintiff and the members of the Class seek an order requiring Defendants to disclose such misrepresentations, and to preclude Defendants' failure to disclose the existence and significance of said misrepresentations.

149.   **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

### A. "Unfair" Prong

150.   **Unfair Standard.** Under California's False Advertising Law, Cal. Bus. & Prof. Code Section 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

151.   **Injury.** Defendants' action of mislabeling and advertising the Products as if they were fit for recycling does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who are duped into purchasing the Products and receive Products of a lesser standard than what they reasonably expected to receive Consumers cannot avoid any of the injuries caused by Defendants' deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendants' deceptive labeling and advertising outweigh any benefits.

152.   **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200.

In so doing, they "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

153.    **No Utility.** Here, Defendants' conduct of labeling the Products as alleged herein when the Products are not fit for recycling has no utility and financially harms purchasers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

154.    **Legislative Declared Policy.** Some courts hold that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

155.    The California legislature has maintained a declared policy of prohibiting misrepresentations regarding the characteristics, ingredients, uses, or benefits of consumer goods, reflected in Cal. Civ. Code § 1770(a)(5).

156.    The California legislature has maintained a declared policy of prohibiting the advertising of goods with intent not to sell them as advertised, reflected in Cal. Civ. Code § 1770(a)(9).

157.    The California legislature has maintained a declared policy of prohibiting the sale or distribution of any product or packaging for which a deceptive or misleading claim about the recyclability of the product or packaging is made, reflected in Cal. Pub. Res. Code § 42355.51(a).

158.    The California legislature has maintained a declared policy of prohibiting the use of untruthful, deceptive, or misleading environmental marketing claims including any claim identified in the FTC's "Green Guides," reflected in Cal. Bus. & Prof. Code § 17580.5(a).

159.    The FTC's "Green Guides" state that: "It is deceptive to misrepresent, directly or by implication, that a product or package is recyclable." 16 C.F.R. § 260.12(a).

160.    The "Green Guides" also state that: "Marketers should clearly and prominently qualify recyclable claims to the extent necessary to avoid deception about the availability of recycling programs and collection sites to consumers." 16 C.F.R. § 260.12(b).

161.    Defendants' unfair conduct is tethered to the aforementioned California and federal legislative declared policies.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

162. **Injury to Lawful Competitors.** Defendants' labeling and advertising of the Products with false recyclability claims gives them a competitive advantage in the marketplace, stifles competition, and harms their lawfully acting competitors that do not make similar misrepresentations.

163. **Unfair Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have known of their unfair conduct. Defendants' misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

164. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products as alleged herein.

165. **Ongoing Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

166. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practices of labeling the Products as alleged herein.

167. **Causation/Damages.** Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the Class paid an unwarranted premium for these Products. Specifically, Plaintiff and the Class paid for "Recycling" Products that are not fit for recycling. Plaintiff and the Class would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### B. "Fraudulent" Prong

168.    **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

169.    **Fraudulent Business Practice.** Defendants labeled and advertised the Products as alleged herein with the intent to sell the Products to consumers, including Plaintiff and the Class. The labeling and advertising of the Products as suitable for recycling is misleading and Defendants knew or should have known of its deceptiveness. The labeling and advertising are likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

170.    As alleged herein, the misrepresentations by Defendants constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

171.    **Reasonable and Detrimental Reliance.** Plaintiff and the Class reasonably and detrimentally relied on the material and deceptive labeling and advertising to their detriment in that they purchased the Products.

172.    **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from creating a Product that, by its very nature, is deceptive and unfit for the purpose advertised.

173.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

174.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling the Products as alleged herein.

175.    **Causation/Damages.** Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' fraudulent conduct. Plaintiff paid an unwarranted premium for the Products.  Specifically, Plaintiff and the Class paid for products that they believed were fit

for recycling when, in fact, the Products are not. Plaintiff and the Class would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### C. "Unlawful" Prong

176.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

177.    **Violations of CLRA and FAL.** Defendants' labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the Sections regarding those causes of action.

178.    **Additional Violations.** Defendants' conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208 and 17580.5. Additionally, Defendants' misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

179.    **Unlawful Conduct.** Defendants' packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendants knew or should have known of their unlawful conduct.

180.    **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from creating a Product that, by its very nature, is deceptive and unfit for the purpose advertised.

181.   **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

182.   **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of false and deceptive advertising of the Products.

183.   **Causation/Damages.** Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' unlawful conduct. Plaintiff and the Class paid an unwarranted premium for the Products. Plaintiff and the Class would not have purchased the Products if they had known that Defendants purposely deceived consumers into believing that the Products are fit for recycling. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

<u>COUNT TWO</u>

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, et seq.)**

***(On Behalf of the California Subclass)***

184.   **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

185.   **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass.

186.   **FAL Standard.**  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

187.   **False & Material Labeling and Advertising Disseminated to Public.** Defendants violated Section 17500 when they advertised and marketed the Products in an unfair, deceptive, untrue, and misleading way and disseminated misrepresentations to the public through the Products' labeling, packaging, and advertising. Defendants misled consumers into believing the Products are recyclable and accepted for municipal use. But the Products are neither recyclable, nor are they accepted for use by the vast majority of municipal recycling programs across the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

nation, including across California. The label and its misrepresentations are material because consumers want a more sustainable choice, a trash bag that is recyclable and fit for municipal recycling use, and they are likely to mislead a reasonable consumer into purchasing the Products.

188.    **Knowledge.** In making and disseminating the representations alleged herein, Defendants knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

189.    **Intent to sell.** Defendants' labeling and advertising as alleged herein was specifically designed to induce reasonable consumers, like Plaintiff and the Class, to purchase the Products.

190.    **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seek a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, et seq.)

### (*On Behalf of the California Subclass*)

191.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

192.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass.

CLASS ACTION COMPLAINT

193.   **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful." Civ. Code § 1770(a).

194.   **Goods/Services.** The Products are "goods," as defined by the CLRA in Civil Code Section 1761(a).

195.   **Defendants.** Defendants are "persons," as defined by the CLRA in Civil Code Section 1761(c).

196.   **Consumers.** Plaintiff and members of the Class are "consumers," as defined by the CLRA in Civil Code Section 1761(d).

197.   **Transactions.** The purchase of the Products by Plaintiff and members of the Class are "transactions" as defined by the CLRA under Civil Code Section 1761(e).

198.   **Violations of the CLRA.** Defendants violated the CLRA by selling the Products to Plaintiff and the Class through the false, misleading, deceptive, and fraudulent labeling and advertising:

    a.   Section 1770(a)(5) by representing that the Products have "characteristics . . . uses, [or] benefits . . . that [they] do not have."

    b.   Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

    c.   Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

199.   **Knowledge.** Defendants' uniform and material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading.

200.   **Malicious.** Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

201.    **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the Class could not have reasonably avoided such injury.  Plaintiff and members of the Class were unaware of the existence of the facts that Defendants suppressed and failed to disclose, and Plaintiff and members of the Class would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

202.    **Causation/Reliance/Materiality.** Plaintiff and the Class suffered harm as a result of Defendants' violations of the CLRA because they relied on the misrepresentation in deciding to purchase the Products. The misrepresentation was a substantial factor and material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

203.    **Causation/Damages.**  As a direct and proximate result of Defendants' misconduct in violation of the CLRA, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of restitution and disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies. Plaintiff intends to amend his complaint to seek legal damages once 30 days has elapsed following Defendants receipt of Plaintiff's statutory notice letter.

204.    **Injunction.** Given that Defendants' conduct violated Civil Code Section 1780, Plaintiff and members of the Class are entitled to seek, and do hereby seek, injunctive relief, including without limitation, public injunctive relief, to put an end to Defendants' violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendants' false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiff and the Class. Accordingly, Plaintiff seeks an injunction to enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Section 1780(a)(2), and otherwise require Defendants to take corrective action necessary to dispel the public misperception

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

engendered, fostered, and facilitated through Defendants' deceptive labeling of the Products as alleged herein.

## COUNT FOUR

### Breach of Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

205. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

206. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

207. **Express Warranty.** By advertising and selling the Products at issue, Defendants made promises and affirmations of fact on the Products' packaging and labeling, and through their marketing and advertising. Defendants, by labeling the Products with the "Recycling" representation, "chasing arrows" symbol, and the statement "designed for municipal use," warranted that the Products are recyclable and that they are generally compatible with municipal recycling programs—neither is true. The labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendants. Defendants purport, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the labeling and advertising as alleged herein.

208. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendants made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through their marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendants—namely, that the Products are recyclable and fit for use in municipal recycling programs.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

209.  **Breach of Warranty.** Contrary to Defendants' warranties, the Products are not recyclable nor suitable for municipal recycling use and, therefore, Defendants breached their warranties about the Products and their qualities.

210.  **Causation/Remedies.** As a direct and proximate result of Defendants' breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

## COUNT FIVE

### Fraudulent Inducement – Intentional Misrepresentation

### (*On Behalf of the Nationwide Class and California Subclass*)

211.  **Incorporation by Reference.** Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

212.  **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

213.  **Defendants' Misrepresentation.** By labeling and marketing the Products using the "Recycling" representation, blue "chasing arrows," and the statement "DESIGNED FOR MUNICIPAL USE," Defendants misrepresented that the Products are recyclable and suitable for municipal use.

214.  **Defendants' Knowledge.** Defendants knew, or should have known, that the Products were falsely labeled and advertised, and that knowledge of the Products non-recyclability and incompatibility with municipal recycling programs was withheld from consumers.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

215.   **Material Misrepresentation.** Defendants also knew that their misrepresentations regarding the Product were material, and that a reasonable consumer would rely on Defendants' representations in making purchasing decision.

216.   **Plaintiff's Knowledge.** Plaintiff and Class Members did not know-nor could they have known through reasonable diligence-that the Products are not recyclable and not fit for use in municipal recycling programs.

217.   **Reasonable Reliance.** In making their purchasing decisions, Plaintiff and Class Members reasonably relied on Defendants' false, deceptive, and misleading representations that the Products are recyclable and suitable for the bagging and disposal of recycling through municipal recycling programs.

218.   Plaintiff and Class Members reliance on Defendants' representations was reasonable as Glad is a trusted brand with a reputation for quality and reliability.

219.   **Intentional Inducement.** Defendants intended to induce—and did, indeed, induce—Plaintiff and Class Members to purchase the Products by affirmatively misrepresenting that the Products are recyclable and fit for the purpose of bagging and disposing of recyclable waste, despite the fact that the Products are neither recyclable nor generally fit for the purpose advertised.

220.   **Causation/Remedies.** As a direct and proximate result of Defendants' intentional misrepresentation, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for fraudulent inducement by intentional misrepresentation in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

CLASS ACTION COMPLAINT

## COUNT SIX

### Negligent Misrepresentation

### (*On Behalf of the Nationwide Class and California Subclass*)

221.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

222.    **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

223.    **Duty.** Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the development, testing, manufacture, marketing, distribution, and sale of the Products.

224.    **Breach.** Defendant breached its duty to Plaintiff and the Class by marketing and selling the Products to Plaintiff and the Class without the qualities, characteristics, and suitability for use as advertised by Defendant, and by failing to promptly remove the Product from the marketplace or take other appropriate remedial action. Specifically, the Products are not recyclable, nor are they generally fit for the purpose of bagging and disposing of recycling through municipal recycling programs as Defendants advertised.

225.    **Defendants' Misrepresentation.** By labeling and marketing the Products using the "Recycling" representation, "chasing arrows" symbol, and the statement "DESIGNED FOR MUNICIPAL USE," Defendants misrepresented that the Products are recyclable and suitable for municipal use.

226.    **No Reasonable Grounds.** Defendants knew or should have known that the qualities and characteristics of the Product were not as advertised, marketed, detailed, or otherwise represented or suitable for its intended use and were otherwise not as warranted and represented by Defendants. Defendants had no reasonable grounds for believing that the Products are recyclable or that they are generally compatible with municipal recycling programs throughout California and the United States.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

227.    **Material Misrepresentation.** Defendants also knew, or should have known, that their misrepresentations regarding the Product were material, and that a reasonable consumer would rely on Defendants' representations in making purchasing decision. The Products' value is tied to their purported recyclability and compatibility with municipal recycling programs, and these are the key attributes that differentiate the Products from ordinary trash bag products.

228.    **Plaintiff's Knowledge.** As alleged herein, Defendant lacked reasonable ground for believing the false and deceptive "recycling" claim to be true.

229.    **Reasonable Reliance.** In making their purchasing decisions, Plaintiff and Class Members reasonably relied on Defendants' false, deceptive, and misleading representations that the Products are recyclable and generally suitable for the bagging and disposal of recycling.

230.    Plaintiff and Class Members reliance on Defendants' representations was reasonable as Glad is a trusted brand with a reputation for quality and reliability.

231.    **Intentional Inducement.** Defendants affirmatively misrepresented that the Products are recyclable and fit for the purpose of bagging and disposing of recyclable waste to induce Plaintiff and Class Members to purchase the Products. Plaintiff and Class Members were induced to purchase the Products based on the misrepresentations.

232.    **Causation/Remedies.** As a direct and proximate result of Defendants' negligent misrepresentation, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for negligent misrepresentation in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

///

///

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## COUNT SEVEN

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

233.    **Nationwide Class & California Subclass.** If there are no enforceable contractual obligations between the Parties, Plaintiff brings this claim for unjust enrichment/restitution in the alternative, individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

234.    **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

235.    **Defendants' Knowledge of Conferred Benefit.** Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

236.    **Defendants' Unjust Receipt Through Deception.** Defendants' knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representations and omissions as described in this Complaint.

237.    **Causation/Damages.** As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief, including without limitation, public injunctive relief, to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

238.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent,

1   and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent

2   conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is

3   malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products

4   that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights

5   of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of

6   their conduct and deliberately failed to avoid misleading consumers, including Plaintiff.

7   Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base,

8   and/or contemptible that reasonable people would look down upon it and/or otherwise would

9   despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel

10  and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as

11  Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with

12  the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice,

13  oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by

14  officers, directors, and/or managing agents of Defendants.

15  ## **PRAYER FOR RELIEF**

16  239.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

17  pray for judgment against Defendants as follows:

18      a.    **Certification:** For an order certifying this action as a class action, appointing
19            Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as
            Class Counsel;

20      b.    **Declaratory Relief:** For an order declaring that Defendants' conduct
            violates the statutes and laws referenced herein;
21

22      c.    **Injunction:** For an order requiring Defendants to immediately cease and
            desist from selling the unlawful Products in violation of law; enjoining
23          Defendants from continuing to market, advertise, distribute, and sell the
            Products in the unlawful manner described herein; requiring Defendants to
24          engage in an affirmative advertising campaign to dispel the public
            misperception of the Products resulting from Defendants' unlawful conduct;
25          and requiring all further and just corrective action, consistent with
            permissible law and pursuant to only those causes of action so permitted;

26      d.    **Public Injunctive Relief:** For an order enjoining the use of deceptive
            "Recycling" representations in connection with the advertising and sale of
27          any "Recycling" bag product;

28      e.    **Damages/Restitution/Disgorgement:** For an order awarding monetary

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

f.      **Attorneys' Fees and Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g.      **Pre-/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h.      **All Just and Proper Relief:** For such other and further relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Dated: February 2, 2023                          Respectfully submitted,

                                                 **CLARKSON LAW FIRM, P.C.**
                                                 By:

                                                  _/s/ Zachary T. Chrzan_
                                                 Ryan J. Clarkson
                                                 Zachary T. Chrzan

                                                 *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT